## City of Louisville v. Carter.

(Decided February 23, 1911.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

Municipal Corporations—Injury to a Boy by a City Wagon—Action for Damages—Discretion of City Authorities.—This action was brought against the city of Louisville for damages for running over a boy, eleven years old, by one of the city wagons, and damages awarded, and the city appeals. Held, that a city is not required to use the safest or best means, or any particular means, in the conduct of its governmental business. The manner in which the wagons of a city shall be moved from one part of the city to another must of necessity be left to the discretion of the city authorities, and no ground of complaint is afforded because one method of moving these wagons is adopted or used in preference to another.

HUSTON QUIN and CLAYTON B. BLAKEY for appellant.

EDWARDS, OGDEN & PEAK, J. L. RICHARDSON and H. O. WILLIAMS for appellee.

Opinion of the Court by Judge Lassing—Reversing.

While playing in the street, Harry Carter, an eleven-year-old boy, was run over by one of the wagons belonging to the city of Louisville and severely injured. Alleging that his injury was due to the negligence of the employe of the city in charge of the wagon, through his next friend he sued to recover damages therefor. The city denied liability. A trial resulted in a verdict in plaintiff's favor for $300. The city appeals.

A question is raised by the city as to the identity of the wagon which ran over the boy. It is urged that the evidence does not sustain the charge that the injury was inflicted by one of the city wagons. But from the conclusion which we have reached, we will treat the case

as though it were clearly established that the injury was done by a wagon belonging to the city.

Plaintiff charges, and we treat it as true, that one of the city's sprinkling carts was being driven through the streets, and that it had another wagon, used by the street cleaning department, hitched onto it. This last wagon, it is claimed, injured the boy. It is conceded by the plaintiff's counsel that, if the injury had been inflicted by the sprinkler while being used in sprinkling the street, no recovery could be had. But it is urged that, inasmuch as the sprinkler was not being used for sprinkling purposes, but to haul another wagon, a different rule applies. In other words, that as the sprinkler was not then being used for sprinkling the street, no governmental duty was being discharged, and hence liability attaches for the negligence of the driver.

We are unable to draw the distinction which appellee's counsel would make between an injury resulting from the negligent use of the sprinkler while actually sprinkling, and one while the sprinkler was being drawn through the city from one part thereof to another. In the numerous cases that have been decided by this and other courts, holding that a city is not liable for an injury that resulted through the negligence of its employees engaged in the discharge of any of those duties commonly called ''governmental functions,'' the opinion in each is rested upon the idea that, as the city is a branch of the State government, an arm of the State, it is against public policy to permit it to be used for the negligence of those of its servants engaged in the discharge of some duty which has for its aim the protection of the lives, health, or property of the citizens. In none of these opinions, to which our attention has been called, has the distinction here contended for been made.

In Greenwood v. City of Louisville, 13 Bush, 226, it is held that no recovery can be had against a city for an injury resulting from the negligent operation of a fire engine in responding to a fire call. The case has not been presented where a recovery was sought for an injury resulting from the negligent operation of a fire engine returning from a fire, though we can see no difference between the two. The fire engine must be kept in a place provided for it. After the fire has been extinguished, the engine must be returned to the place provided for its safety and keeping. The employees of the city

are as much engaged in the discharge of a governmental duty in returning the fire engine to its proper place as they were in taking it from the engine house to the fire. It is all one duty.

And so, in case of an injury resulting from the negligent operation of a street sprinkler, in Kippes v. City of Louisville, 140 Ky., 423, it is held that no recovery can be had. But it is argued that no recovery was allowed in that case because the injury resulted while the sprinkler was being used in sprinkling the streets. If this argument is sound, then so long as the sprinkler is flushing or sprinkling the street, no recovery can be had for an injury resulting from the negligence of its driver; but when its tank is empty, and the wagon is being driven to the water plug, hydrant, or other place where the tank may be filled, the city is liable for any injury that may result on this trip. We are not disposed to adopt this view, but hold that, whether the sprinkler is being taken to the pla se where it is to be used, or back to the place where it it to be kept after it has been used, or hauled through the streets of the city for the purpose of filling the tank, is immaterial. These acts are all part and parcel of the necessary work which the employees in charge of the street sprinkling department have to do in order to efficiently carry on that work.

It is argued that, even conceding this to be true, still the men in charge of the sprinkler had no right to use the sprinkler to haul the garbage wagon, or city wagon, through the streets; that this was not a governmental work. Adopting this view, it would then come to a question as to the motor power that the city might use in removing its wagons from one part of the city to another. These carts, or wagons, used for the purpose of clearing the streets of the city and removing the waste and refuse matter therefrom, are certainly employed in a use that is for the general public good; and hence the function which the city exercises in their use is a governmental function. It becomes necessary at times to move these wagons from one point in the city to another. How shall this be done? By hitching a team to them or an engine? Or by hitching them to another wagon belonging to the city that happens to be there? It seems that the necessary answer to this is that the city shall be permitted, or left free to adopt such means as it desires for their removal, and in the means employed the public can have

no possible interest or concern. If no liability attaches for an injury resulting from negligence of employees of the city engaged in this governmental work, then it is immaterial by what means they are moved, for liability cannot attach in any event. It is true that possibly it would have been safer and better for the city to have required this wagon to be removed by hitching a horse or team of horses to it, rather than by attaching it to the rear of this sprinkler; but the city is not required to use the safest or best or any particular means in the conduct of its governmental business. The manner in which they shall be moved from one part of the city to another is, and must of necessity, be left to the discretion of the city authorities, and no ground of complaint is afforded because one method of moving these wagons is adopted or used in preference to another.

We are clearly of opinion that, under the facts stated, about which there is no contrariety of opinion, plaintiff was not entitled to recover, and the motion for a peremptory instruction should have been sustained. Judgment reversed and cause remanded for further proceedings consistent herewith.