## Varney v. City of Covington.

(Decided November 7, 1913).

### Appeal from Kenton Circuit Court
### (Criminal, Common Law and Equity Division).

1. Municipal Corporations—Sidewalks—Care Required.—A city is bound to use ordinary care and diligence in making its sidewalks reasonably safe and convenient for travel, and it is not liable for injuries to a pedestrian due to her slipping and falling on a sidewalk, where the sidewalk is properly constructed, and its slippery condition was the result of natural causes.

2. Municipal Corporations—Defective Sidewalks—Notice.—The duty of a city to exercise ordinary care to keep its sidewalks in a reasonably safe condition does not extend to the removal of ice which constitutes no other defect than slipperiness. If, however, there should be an accumulation of snow or ice in such ridges or inequalities as would be liable to trip pedestrians, and for that reason constitute an obstruction, or the sidewalk itself is defective, or its natural condition has been changed by artificial means, or it is customary for the city to treat the removal of snow and ice as a regular part of highway management, the city, in case of resulting injury, is liable for its failure to remove the obstruction, provided it had knowledge of such obstruction or the obstruction had existed for such a length of time as that the exercise of ordinary care, on the part of the city, would have enabled it to have discovered its presence.

3. Municipal Corporations — Defective Sidewalks—Action — Sufficiency of Evidence.—In an action against a city for injuries to a pedestrian resulting from her slipping and falling on. an accumulation of ice on a sidewalk, it failing to appear by proof that the injury was the result of any defect in the construction of the sidewalk, or its changed natural condition by artificial means, or that the city had undertaken the duty of removing the snow and ice from its sidewalks, a peremptory instruction to the jury to find for the city was proper.

B. F. GRAZIANI for appellant.

STEPHENS L. BLAKELY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Mary Varney, while walking westwardly on the north side of Wallace avenue about one hundred feet east of Madison avenue in the city of Covington, slipped and fell on ice which had gathered upon the pavement and was concealed by a slight fall of snow. The fall caused the breaking of appellant's hip, which injury, as she is sixty-seven years of age, will, in all probability, make her a cripple for life. The injury was sustained January 11, 1912, and, on the 24th of June, 1912, she instituted suit against the city of Covington and Adam Grossman, the owner of a building standing near the place of the accident, to recover damages for the injuries sustained. Being required by the court to elect whether she would prosecute the action as to the city or Grossman, appellant elected to proceed against the city alone, and the action was thereupon dismissed as to Grossman. The city answered traversing the averments of the petition and pleading contributory negligence on the part of the appellant. The trial resulted in a verdict for the city, the jury having so found in obedience to a peremptory instruction given by the court, at the conclusion of appellant's evidence. The latter was refused a new trial, hence this appeal.

A reversal of the judgment entered upon the verdict is asked upon the single ground that the trial court erred in granting the peremptory instruction; it being the appellant's contention that the proof introduced in her behalf. was sufficient to authorize the submission of the case to the jury.

Appellant complains that there was, at the place of the accident, a slight slope in the sidewalk in the direction of the street and that the water, which produced the

ice on the pavement that caused her fall, came from rains or melting ice and snow on the Grossman building, which ran down a fire escape on the side of the building and from a coping in the rear of the building. It appears from the evidence that the slope in the sidewalk was slight and necessary for the purpose of drainage, and that the coping in the rear of the building extended only to the property line and not over or upon the sidewalk; also that the water from the fire escape flowed across the sidewalk at a point some feet east of the place where appellant was injured. While there was some evidence tending to show that the ice where appellant fell had accumulated in the form of small circular ridges, these ridges were not of sufficient height to constitute an obstruction, and instead of adding to the risk attending the use of the pavement by pedestrians, lessened it, because the ice in such slight ridges was less liable to make pedestrians lose their footing than would have been a slick surface. According to the evidence, there was nothing by way of a defect in the construction or condition of the sidewalk itself, or in the condition of the adjacent Grossman building, that caused the water to flow upon or stand on the pavement at the place where appellant was injured; nor did the water flow or stand there in unusual quantities. In other words, it is apparent from the evidence that the formation upon the sidewalk of the ice, which caused appellant's fall, was not due to any defect in or about the sidewalk or adjacent building, but was due to purely natural causes. As further shown by the evidence, the weather during the week previous to January 11, 1912, had been unusually severe. It had been snowing or raining almost every day, followed by severe freezing spells which, much of the time, kept the pavements of the city in a generally snowy or icy condition. The rains, and thawing of the ice which had previously formed adjacent to the sidewalk, caused the water to trickle across the sidewalk; the colder weather following, produced the ice on the pavement, and its slippery surface alone caused appellant's fall and consequent injuries. The condition described was one which the city could not guard against, and for which it cannot be made responsible. To hold otherwise, would make the city liable for every injury to a pedestrian sustained from the presence of ice in any quantity upon a sidewalk, however well the sidewalk might be constructed.

The duty of a city to exercise ordinary care to keep its sidewalks in a reasonably safe condition does not extend to the removal of ice which constitutes no other defect than slipperiness. If, however, there should be an accumulation of ice in such ridges or inequalities as would be liable to trip pedestrians, and for that reason constitute an obstruction to travel, the city, in case of resulting injury, would be liable, provided, it had knowledge of such obstruction or the obstruction had existed such a length of time as that the exercise of ordinary care, on the part of the city, would have enabled it to have discovered its presence. The liability, therefore, of the city is not that of a guarantor of the safety of travelers. The corporate authorities are only bound to use ordinary care to keep the streets and sidewalks reasonably safe and convenient for travel, and there should be no liability on the part of the city, in case of injury to a pedestrian, where the sidewalk is properly constructed and the injury complained of was caused merely by its slippery condition produced by the prevailing storms of the season.

In Town of Bellevue v. England, 118 S. W., 994, the plaintiff was allowed to recover for an injury caused by a fall on the ice, but this was because the street was rendered unsafe for travel on account of its board sidewalk and gullies that had been allowed to form in the street and sidewalk; and, in addition, because a watermain in the street had sprung a leak some months before, which had permitted the escaping water to run down the street into the gullies, forming in one of them, the ice upon which plaintiff fell; the dangerous condition of the sidewalk and street having been known to the city authorities for several months. But no such condition as there existed, is presented by the record in this case, for here we find it manifest from the evidence that there was no defect in the sidewalk or street, and that the appellant's injuries were due merely to the slipperiness of the ice, which made the accident one against which the city could not, by ordinary care, have guarded. The case before us is more nearly akin to that of Jeagar, et al. v. City of Newport, 155 Ky., 110, in which we approved the ruling of the trial court in directing a nonsuit upon the plaintiff's evidence. The opinion states the doctrine applicable to the instant case in the following language:

"While, due to the operation of the statutes there in force, municipalities in the New England States are

held to a stricter degree of liability, the decided weight of authority elsewhere, as well as the tendency of the more recent decisions, is to hold that a city is not ordinarily liable for mere slipperiness of its sidewalks, occasioned by snow and ice. Where, however, the sidewalk itself is defective or the snow or ice amounts to an obstruction, or its natural condition has been changed by artificial means, liability may attach, or where it is customary to treat the removal of snow and ice as a regular part of highway management, a failure to do so may become wrongful or negligent."

As it was not made to appear by the proof that the injury sustained by the appellant was the result of any defect in the construction of the sidewalk or the changed natural condition of the ice by artificial means, or that the city had undertaken the duty of removing the snow and ice from its sidewalks, there is no ground for our holding that the trial court erred in directing a verdict in favor of the appellee.

Wherefore, the judgment is affirmed.