# Pfiester's Adm'r v. Jones et al.

June 12, 1942.

Robert E. Hogan and Ray H. Kirchdorfer for appellant.

Ben F. Washer, Gavin H. Cochran, D. L. Street, Joseph Kaplan, John E. Tarrant, Ogden Galphin, Tarrant & Street and Hal O. Williams for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

William Pfiester was killed about 8:45 P. M., on Jan. 16, 1940, while riding a motorcycle under a viaduct at Fourth and H Streets in the City of Louisville. He was 24 years of age and was employed by S. P. Jones, who operated a drug store in Louisville under the business name of Jones Apothecary, his duties being to deliver packages to the customers of the store on a motorcycle which he owned and rode.

Edward L. Mackey qualified as Pfiester's administrator and brought this action against Jones, the City of Louisville, and the Louisville Railway Company (the last two named defendants being hereinafter referred to respectively as the city and the company), alleging his decedent's death was caused by their negligence. Jones' general demurrer to the petition as amended was sustained, and upon a trial as to the two remaining defendants a verdict was directed for them at the close of plaintiff's evidence, resulting in this appeal being prosecuted against all three defendants.

The petition as amended averred that the city and the company negligently permitted ice, snow, and other slippery substances to collect on Fourth Street and between the company's tracks at or near where the street ran under a viaduct at Fourth and H Streets, which made the street and the space between the company's tracks unsafe and dangerous to traffic, and that these two defendants failed to remove same or to remedy the dangerous condition after having due notice thereof; that decedent owned a motorcycle and was employed by Jones to deliver packages from the apothecary to its customers, and that Jones "adopted and controlled the said motorcycle and the use of same as that said defendant's (Jones') own appliance and instrumentality * * * in making deliveries," which had pneumatic tires and was unsafe to use on icy, snowy and slippery streets.

Plaintiff further alleged that on the occasion in question Jones sent his decedent on a delivery over such streets and negligently failed to furnish him with a safe appliance with which to accomplish the purpose in hand

and negligently failed to furnish him a safe place to work; that while riding his motorcycle under this viaduct between the tracks of the company it skidded on the snow and ice which the city and the company negligently allowed to accumulate on Fourth Street between the company's tracks, and threw Pfiester against a light pole, resulting in his death. Jones filed a general demurrer and the other two defendants filed answers traversing plaintiff's material allegations and pleading contributory negligence on the part of the decedent.

Appellant cites Rex-Pyramid Oil Co. v. Magan, 287 Ky. 459, 153 S. W. (2d) 895, and other cases involving the Workmen's Compensation Act, Kentucky Statutes, Section 4880 et seq., wherein it was held that a servant whose master's business takes him into a street where he suffers an accident incident to the risk of the street, is injured in the course of his employment. It is apparent such cases have no application here. The rule that the master must use ordinary care to furnish his servant with safe appliances and a reasonably safe place to work is based upon the possession and control by the master of the appliances used and the premises where the work is performed, and is not applicable to the instant case where Pfiester owned the motorcycle which he operated on the public streets, over neither of which Jones had any control. 35 Am. Jur., Section 174, pp. 602, 603; Gillespie's Ex'rs v. Howard, 219 Ky. 721, 294 S. W. 154. It follows that the trial judge correctly sustained Jones' general demurrer to the petition as amended.

The testimony of J. L. Kendall, who had charge of the Louisville office of the United States Weather Bureau, shows that snow in considerable quantities fell intermittently in Louisville from Dec. 23, 1939, to Jan. 13, 1940, during which interim the temperature varied from 3 degrees below zero to 54 degrees above. Most of the time from Jan. 11th to Jan. 15th, the mercury was well up in the 40's, though occasionally it dipped below freezing. On the 14th there was a rain which with the high temperatures caused the snow to melt but some ice patches were left on the streets. On the day of the accident the thermometer registered above freezing but that night it dipped below freezing and it is agreed there was ice on Fourth Street some 50 or 100 feet to the north of the northern opening of this underpass. The testimony is conflicting as to the thickness and character of this

ice. Some of the witnesses fix it as a thin skim, or glaze, of smooth ice; others as of sufficient thickness to prevent a car from cutting through and that there were rough ridges of ice which had been made by passing traffic packing ice and snow on and into the street where it had never melted but had remained since the first snow. The street leading into the north end of the underpass has a considerable grade which makes an incline for vehicles emerging from its northern mouth. Upon coming out of the underpass and while proceeding north up the incline between the tracks of the company, Pfiester's motorcycle skidded when he reached the point where the ice was on Fourth Street, so August Roller and his wife testified, which caused the fatal accident.

A city is not a guarantor of the safety of travelers using its streets and is only bound to use ordinary care to keep its streets reasonably safe for traffic. Ordinarily, there is no liability where streets are properly constructed and the injury is caused by their slipperiness resulting from ice and snow in its natural condition. In the absence of a statute, the city is not required to remove ice and snow from its streets which is the natural result of wintry storms. If, however, the municipality through faulty construction, or otherwise, causes water to collect on its streets and same freezes into rough or dangerous ridges so as to obstruct travel, or where an obstruction is caused by artificial means, or by the city's attempt to remove the snow and ice, the city might become liable if it took no steps to remedy the condition after due notice thereof. Varney v. City of Covington, 155 Ky. 662, 160 S. W. 173; Joegar v. City of Newport, 155 Ky. 110, 159 S. W. 671; Wyatt v. City of Henderson, 222 Ky. 292, 300 S. W. 921; City of Ashland v. Burley, 265 Ky. 176, 96 S. W. (2d) 581.; City of Covington v. Keal, 280 Ky. 237, 133 S. W. (2d) 49. This appears to be the general rule as will be seen from examining 13 R. C. L., Section 339, p. 412; 43 C. J., Section 1800, p. 1022; and annotations in 3 A. L. R. 1130, 48 A. L. R. 1154, and 80 A. L. R. 1170.

The evidence shows the ice at the place of the accident was the result of the storms of winter and that its natural lay or condition was not changed by artificial means or by either the company or the city attempting to remove it. While there is testimony that the ice was rough and contained some ridges, such condition was of

a minor character resulting from traffic, and there was no proof that the roughness or the ridges in the ice was sufficient to obstruct traffic, although possibly it might have cause the motorcycle to have skidded. Under the rule stated in the preceding paragraph and the authorities cited, this was not sufficient to make the city liable.

As the city was not liable on account of the icy condition of the street, it follows as a matter of course that the company cannot be held liable, since the latter's only duty in the premises was to see that the street between its rails and adjacent thereto should be kept so nearly level with the rails as not to endanger the lives or property of people using the street or crossing its rails. Groves v. Louisville Ry. Co., 109 Ky. 76, 58 S. W. 508, 52 L. R. A. 448; City of Louisville v. Arrowsmith, 145 Ky. 489, 140 S. W. 1022; South Covington & C. St. R. Co. v. Wintermeyer, 182 Ky. 94, 206 S. W. 157.

Therefore, the trial judge correctly directed a verdict in favor of the defendants city and company. Having arrived at this conclusion, it is not necessary to discuss the other rather interesting questions raised in the various briefs.

The judgment is affirmed.