COMMONWEALTH of Kentucky REVENUE CABINET; Chris Gorman, Attorney General; Kim Burse, Secretary of Revenue Cabinet and Steven L. Lenarz, Commissioner, Department of Taxation–Revenue, Appellants,

v.

Collie HALL, Appellee.

No. 96–CA–0599–MR.

Court of Appeals of Kentucky.

Jan. 31, 1997.

Motion to Depublish Denied
March 19, 1997.

Arnold C. Jones, Kentucky Revenue Cabinet, Frankfort, for appellants.

Frederick G. Irtz, II, Lexington, for appellee.

Before GARDNER, GUDGEL and GUIDUGLI, JJ.

GUIDUGLI, Judge.

The Kentucky Revenue Cabinet appeals from a writ of mandamus issued by the Pike Circuit Court ordering the secretary to release a tax lien placed against real property owned by appellee.

On August 15, 1991, March 17, 1993, and June 11, 1993, the Revenue Cabinet caused separate tax liens to be filed with the Pike County Clerk to record its position as a secured creditor of appellee, Collie Hall. On July 27, 1993, the Revenue Cabinet made an *assessment* of additional income tax due against appellee for the tax year 1991. This assessment was timely protested by appellee which protest is currently pending in an administrative forum, i.e., the tax is not yet final, due and owing. During May 1994, appellee requested the payoff amount for the three liens and the Revenue Cabinet advised the payoff amount for the three liens as $94,853.50 ($9,853.50, $84,174.22, and $130.04 respectively). On May 14, 1994, all three tax liens, including all tax, penalties, interest and fees, were paid in full. Appellee requested the Cabinet to release the liens and the Cabinet declined to do so citing the unresolved protest of the additional 1991 assessment. The additional assessment was not paid when the three liens were paid off.

Appellee petitioned the Pike Circuit Court for a writ of mandamus against the Revenue Cabinet to require it to release the three tax liens. The Pike Circuit Court issued findings of fact, conclusions of law and order on February 14, 1996, and a writ of mandamus was issued and entered on February 21, 1996, requiring the secretary to release the tax liens. The Revenue Cabinet appeals.

The issue presented by this appeal is whether the Revenue Cabinet must release the liens because the additional assessment under administrative appeal is not yet "final, due and owing," or whether KRS 134.420 as amended in 1990, properly authorizes the Revenue Cabinet to retain the lien until all tax obligations are current.

KRS 134.420(2) reads in pertinent part:

(2) If any person *liable* to pay any tax administered by the Revenue Cabinet, ... neglects or refuses to pay the tax after demand, the tax due together with all penalties, interest, and other costs applicable provided by law shall be a lien in favor of the Commonwealth of Kentucky. The lien shall attach to all property and rights to property owned or subsequently acquired by the person neglecting or refusing to pay the tax. (emphasis added).

It is a well-established rule in Kentucky that "... the legislature may create statutory liens and establish the priorities thereof." *Midland–Guardian Co. v. McElroy*, Ky. App., 563 S.W.2d 752 (1978). In 1990 the legislature amended KRS 134.420 to give tax

liens priority or "relate back to" the assessment date, rather than the delinquent date of a tax bill. This Court recently construed the statute and held subsection four (4) is a priority statute that gives the Revenue Cabinet priority over subsequent mortgages even if the lien didn't exist for unpaid future taxes or assessments at the time the mortgage was filed. *Liberty National Bank & Trust v. Vanderkraats,* Ky.App., 899 S.W.2d 511, 513 (1995). This Court held that because the bank had notice of an unsatisfied tax lien at the time of entering into a mortgage with the Vanderkraats, it had notice that future assessments, if any, would be given priority over subsequent mortgages unless all previous assessments and liens against the Vanderkratts were "paid or extinguished" before the mortgage was filed. *Id.*

■ However, pursuant to the plain language of subsection two (2) at issue here, the lien cannot arise until a person is "*liable* to pay" the tax. Black's Law Dictionary defines "liable" as, "Bound or obliged in law or equity; responsible; chargeable; answerable; compellable to make satisfaction, compensation or restitution." Black's Law Dictionary 915 (6th ed.1990).

■ Because of appellee's administrative appeal, the additional 1991 assessment has not yet been determined to be final, due and owing. Whether or not appellee will ultimately be found to owe additional tax for the year 1991, after exhaustion of his remedies, does not change the fact that appellee has *not,* to date, "failed or refused" to pay the additional 1991 assessment as claimed by the Revenue Cabinet.

■ Appellee and all other taxpayers have the right to protest, appeal and litigate any assessment. The Revenue Cabinet's argument that appellee can have the lien released by simply paying the additional assessment and initiating a refund action under KRS 134.580(2), is unpersuasive. A taxpayer should not have to pay a disputed assessment before the determination that he or she is "liable" to pay it to prevent liens from being placed on his or her property, nor be forced to incur further costs and aggravation in a "refund action" to get back money they may never have owed in the first place.

For the foregoing reasons, we hold that the Revenue Cabinet's action in refusing to release the lien was contrary to the plain language of KRS 134.420(2) requiring the taxpayer to be "liable" prior to the filing of a lien. It is not necessary to address the constitutional issues raised by appellee. The order and subsequent writ issued by the Pike Circuit Court are affirmed.

All concur.